UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **JUSTIN SHANE RICHARSON** ) | **CIVIL ACTION** |
| ) | **NUMBER:** |
| ) | |
| **Petitioner,** ) | |
| ) | **JUDGE** |
| **VS.** ) | **MAGISTRATE JUDGE** |
| ) | |
| ) | |
| **AXION LOGISTICS, LLC** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |

___

## COMPLAINT
___

NOW INTO COURT, through undersigned counsel, comes Justin Shane Richardson ("Richardson" or "Plaintiff"), resident of and domiciled in the Parish of St. Tammany, State of Louisiana, who respectfully represents as follows:

1.

Made defendant herein is Axion Logistics, LLC ("Axion"), a limited liability company with it domicile located in the County of Harris, State of Texas.

2.

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.A. §§ 1332 and 1441, in that all parties to this action are of diverse citizenship, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.

Venue is proper in this district pursuant to 28 U.S.C.A. § 1391(b)(2), in that a substantial part

of the events or omissions giving rise to the claim occurred within this judicial district.

4.

Mr. Richardson was employed by Axion on February 7, 2012, as General Manager of Louisiana operations. He was terminated on May 21, 2012. Mr. Richardson's termination occurred while in the very midst of attempting to bring to light within Axion and rectify fraudulent billing practices on the part of Axion employees at Dow Chemical in St. Charles, Louisiana, and fraudulent claims (including creation of false accounting and tax records) against Axion.

5.

Upon information and belief, the fraudulent practices were expressly authorized by Axion's chief financial officer, Gary Grant, or at a minimum those employees at the very top of Axion's management team; and, for Mr. Richardson's good faith efforts, he was fired.

6.

Mr. Richardson's termination was in violation of La. R.S. 23:967(A), which provides that an employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law discloses or threatens to disclose a workplace act or practice that is in violation of state law. Damages under La. R.S. 23:967 include compensatory damages, back pay, benefits, reinstatement, reasonable attorney fees, and court costs resulting from the reprisal. La. R.S. 23:967(C)(2).

7.

The fraudulent billing practices constituted theft, which is defined as the misappropriation or taking of anything of value which belongs to another by means of fraudulent conduct, practices or representations. La. R.S. 14:67. False Accounting is the intentional rendering of a financial

statement of account which is known by the offender to be false, by anyone who is obligated to render an accounting by the law pertaining to civil matters. La. R.S. 14:70.

8.

Mr. Richardson was hired on February 7, 2012 and, thereafter, promoted to general manager in Louisiana on March 26, 2012. At the time of his hire, Mr. Jimmy Hall was serving as the General Manager of Axion's Louisiana operations. Axion's former company President, Steve Seymour, hired Mr. Richardson on the premise that he would work a BASF turnaround job for a couple of weeks until Mr. Seymour could fire Mr. Hall, whereupon Mr. Richardson would be elevated to the General Manager position. Mr. Seymour and Vice President of Operations, a Mr. Kenny Lebuff, had been working with Mr. Hall on improving his performance, as there had been little or no growth of Axion's Louisiana market share for at least 10 years.

9.

Mr. Lebuff came to Axion after a 30 year career at Dow Chemical. At the time of Mr. Richardson's hire, Axion was working a turnaround project for Dow. Mr. Lebuff had begun investigating Jimmy Hall's billing practices on the Dow job and found that he had not been visiting the Dow plant as frequently as he had claimed. Mr. LeBuff also uncovered other chemical plant locations where Mr. Hall had also not visited on occasions where he claimed to have done so.

10.

At all times pertinent herein, Axion maintained a mileage reimbursement policy consistent with the Internal Revenue Service's standard mileage rate reimbursement method which allows employees to reimburse employees for business use of personal vehicle, at a mileage rate established and updated periodically by the IRS. As long as the employee is required to provide the employer

with a record of miles traveled and the business purpose thereof, the mileage reimbursement is not taxable to the employee, not reportable on his or her IRS form W-2, deductible by the employer and not treated as wage compensation for purposes of the federal and state employer payroll taxes.

11.

Upon information and belief, Mr. Hall was charging mileage for trips to Dow and other chemical company sites which were revealed to be fraudulent when compared with the gate log at Dow and others. The gate log confirmed that Mr. Hall was frequently not present at the Dow plant on dates for which he had billed mileage for trips to that plant.

12.

Mr. Hall's false mileage reimbursement claims resulted in the understatement of his own income, as reported on his IRS W-2 form, for tax purposes (payment for mileage not traveled would be taxable income to Mr. Hall for both federal and state income tax purposes) and resulted in the creation of false accounting records of Axion which, in turn, resulted in the understatement of Axion's state and federal employment tax liability (payment for mileage not traveled would be part of wage compensation rather than travel expense to Axion).

13.

Upon information and belief, Steve Seymour tried to fire Jimmy Hall, at least in part for his fraudulent billing and mileage reimbursement practices, but Gary Grant, Chief Executive Officer for Axion, would not allow it because he liked him and did not want to see him terminated. Instead, Mr. Hall was designated Special Projects Manager for the Dow job; whereupon Mr. Richardson was named General Manager.

14.

Upon information and belief, Kenny Lebuff resigned from Axion shortly thereafter out of disgust for Axion's unethical billing practices. After Mr. Richardson assumed the role of General Manager, he began witnessing, first hand, Jimmy Hall's fraudulent billing and mileage reimbursement practices. On numerous occasions, the operations manager in Baton Rouge, Andy Wheat, would drive to the Dow job site with Mr. Hall, in Mr. Wheat's vehicle. Mr. Hall would tell Mr. Wheat not to tell any one that they rode together, and would submit claims for extra mileage on the premise suggesting that he had made the drive in his own vehicle. Mr. Richardson and Mr. Wheat called Steve Seymore in April of 2012, to report that Mr. Hall was charging mileage for the days on which he was riding with Mr. Wheat. When the incident was reported, Mr. Seymore stated "well of course he is, it is not like you are telling me something I don't already know."

15.

On one occasion, Mr. Wheat was told by Jimmy Hall that he was going to revise Dow time billing sheets to increase the amount of billable time posted on them for Don Ward. Mr. Wheat faxed time sheets to Elaine Young, the vice president of administration for Axion who was in charge of billing on a Friday. He showed Mr. Richardson the two different versions of the time sheets for the same billing dates reflecting the difference in the time sheets. These time sheets showed that Axion was over-billing Dow (Mr. Hall typed the time sheets).

16.

The next Monday, Mr. Richardson called Elaine Young and informed her that the time sheets had been intentionally manipulated to reflect more time than was actually worked. Ms. Young stated that Mr. Ward would need to change them. Mr. Richardson responded by saying that the time on the sheets was intentionally overstated. He asked Ms. Young to compare Don Ward's time to that

of the other workers at Dow and to let him know if Don Ward's time exceeded that of the other workers at Dow for the same dates. Mr. Richardson followed up with Ms. Young the next day and she advised him that Don Ward's hours on his time sheet were twenty hours more that those of the other employees on the same job. She reported to Mr. Richardson that she discussed the issue with Mr. Seymour and was told to bill Dow for the extra time, and to pay Don Ward for the extra twenty hours.

17.

Upon information and belief, Jimmy Hall and Don Ward are close friends. Any Wheat also reported to Mr. Richardson that several other employee's of Axion on the Dow job were smokers and were clocking in and out of the Dow gate in order to smoke, yet were charging Dow for the time not spent working. Additionally, workers were coming into work at the plant late, but billing their time from the start of the 6:00 a.m. shift. All of these facts are easily verified by comparing the billing time sheets to the gate log at Dow St. Charles which reflects the comings and goings of workers through the gate because they are required to swipe their badges through a computerized card reader.

18.

Mr. Richardson then reported these facts to Gary Grant by telephone, at which time he was told that he should not tell anyone about it until he and Mr. Grant had an opportunity to meet and discuss the matter. Mr. Richardson then traveled to Pasadena, Texas, and met with CFO, Jim Konvelman, on Monday, April 30, 2012, where he reported these facts to Mr. Konvelman out of concern that Dow would discover the over billing which would negatively impact the Dow relationship, not to mention the fact that it was fraudulent and illegal. Mr. Konvelman told Mr.

Richardson that he should not tell anyone about these facts until he had spoken to Mr. Grant, the CEO of Axion, about the matter.

19.

The next day, Mr. Konvelman called Mr. Richardson and Andy Wheat in and stated to them words to the effect of: "Gary wants to talk to you about this – but let me prepare you for what to expect from him – he asked what you guys know – and what evidence do ya'll have." Mr. Richardson told Mr. Konvelman that it would be easy to prove the allegations by simply requesting the plant gate log and comparing it to all of the time billing sheets on the job. Mr. Richardson suggested that this should be done and the billing hours should be corrected.

20.

Mr. Richardson and Mr. Wheat met with Gary Grant in Pasadena, Texas, on May 2, 2012. In that meeting, Mr. Grant asked them what they know and what type of information they had on each employee at the Dow job. Mr. Grant inquired about what kind of evidence they had to support the accusations. Mr. Grant then cut them off and instructed them to submit a written list or report on the information. On May 2, 2012, Andy Wheat emailed Mr. Grant a typed list which was prepared by Mr. Richardson.

21.

The following Thursday, Gary Grant had Mr. Richardson meet with him over dinner in Port Arthur, Texas. Present at the meeting were Mr. Grant, Andy Wheat, Steve Seymore, John Fields (VP for Business Development), and Candace Johnson (general manager in Texas). At the dinner, there was no discussion of the over-billing issue. Instead, Candace Johnson spent the entire meeting grilling Mr. Richardson about his background and experience. Mr. Grant pulled out his resume and

handed it to Candace Johnson.  Mr. Grant commented that he did not really have any experience in Axion's industry, that Kenny Lebuff had hired him and that Mr. Grant and the others within Axion's management hierarchy had not hired him.  The entire dinner was spent denigrating Mr. Richardson, while not a word was said about the over billing and mileage reimbursement problems which Mr. Richardson had expected was to be the purpose of the meeting.

22.

After the dinner, Gary Grant told Mr. Richardson that he knew that Ms. Johnson was hard on him and that was the way he wanted it.  Mr. Grant later told Mr. Richardson that he did not make a good impression with the people in Texas.  He said they felt Mr. Richardson was condescending toward them; which was exactly the way Mr. Richardson felt he had been treated by Candace Johnson.  Mr. Grant also told him that his group had intended to make him feel uncomfortable.

23.

Shortly thereafter, Mr. Grant requested that Mr. Richardson type up plans for what he wanted to do with the Baton Rouge office of Axion.  Mr. Richardson did so and wrote what he though Mr. Grant wanted to hear, because the handwriting on the wall had become quite clear.  A week or so later, Steve Seymour came in to see Mr. Richardson and stated that he had not made a good impression with the CEO and Candace Johnson; and that he had dug himself a hole.  When Mr. Richardson asked what was going on with the Dow contract issue and the overbilling of time and mileage, Steve Seymour told him there was nothing to discuss, and to be quiet about it.

24.

On May 21, 2012, Mr. Richardson's employment was terminated by Steve Seymour when he showed up in Mr. Richardson's office unannounced.  The reason given for his termination was

simply that he "was not a good fit" for the company, though he was listed as not eligible for rehire.

25.

JURY REQUEST

Shane Richardson requests a trial by jury of all issues triable of a right by civil jury.

WHEREFORE, Justin Shane Richardson respectfully prays that this Court render judgment in his favor and against Axion Logistics, LLC declaring that Axion violated La. R.S. 23:967 when it took reprisal against Mr. Richardson who in good faith, and after advising Axion of a violation of law, disclosed or threatened to disclose its fraudulent billing practices. Additionally, Mr. Richardson respectfully prays for a judgment against Axion Logistics in an amount to be determined at a trial on the merits equal to compensatory damages, back pay, benefits, reinstatement, reasonable attorney fees, and court costs resulting from the reprisal, as well as all additional relief at law or in equity to which plaintiff may be entitled in the premises.

Respectfully submitted,

_S/ Dale R. Baringer_
Dale R. Baringer, LSBA #2773
James S. Holliday, Jr., LSBA #6957
Evest A. Broussard, III, LSBA #24761
Benjamin J. B. Klein, LSBA #28639
Aaron D. Long, LSBA #33249
**THE BARINGER LAW FIRM, L.L.C.**
201 St. Charles Street
Baton Rouge, LA 70802-6095
Telephone: (225) 383-9953
Facsimile:  (225) 387-3198
*Attorneys for Justin Shane Richardson*

**Service Information on Next Page**

**Please Serve**

Axion Logistics LLC
*Through Its Registered Agent*
Capital Corporate Services, Inc.
8550 United Plaza Building II, Ste. 305
Baton Rouge, LA 70809